CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 1 4 2007

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

LUIS SALVADOR SAUCEDO-GONZALEZ,    )
       Plaintiff,                  )        Civil Action No. 7:07cv00073
                                        )
v.                                     )
                                        )
UNITED STATES OF AMERICA,          )        By: Hon. Michael F. Urbanski
       Defendant.               )        United States Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Luis Salvador Saucedo-Gonzalez ("Saucedo-Gonzalez"), an inmate proceeding

pro se, filed this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b),

2671-2680.[1]  Saucedo-Gonzalez asserts a federal cause of action against the United States of

America for damages arising from an alleged assault by three Bureau of Prisons ("BOP") officers

while he was incarcerated at United States Penitentiary ("USP") Atlanta, Georgia and for the

negligent denial of medical attention, for injuries incurred during that assault, at both USP

Atlanta and USP Lee, Virginia.  By Order entered June 5, 2007, all dispositive matters in this

action were referred to the undersigned to submit proposed findings of fact and a recommended

disposition.

This matter is before the court on defendant's motion for summary judgment.  The court

notified Saucedo-Gonzalez of defendant's motion as required by Roseboro v. Garrison, 528 F.3d

309 (4th Cir. 1975), and advised him that his failure to reply to defendant's motion may result in

dismissal and/or summary judgment being granted for the defendant.  As Saucedo-Gonzalez has

---

[1]By Memorandum Opinion and Order entered April 3, 2007, the claims Saucedo-Gonzalez brought pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), were dismissed for failure to name a proper defendant. See Docket Nos. 8 & 9.

filed a response to defendant's motion and the time allotted for filing any further response has expired, this matter is ripe for disposition.

Upon review of the record, the undersigned finds that there are questions of material fact precluding summary judgment as regards the alleged assault occurring on September 18, 2004 in Atlanta. However, the undersigned finds that there are no issues of material fact as to Saucedo-Gonzalez's claim of negligent denial of medical treatment and that the defendant is entitled to judgment as a matter of law on this claim. Accordingly, it is recommended that the defendant's motion for summary judgment be granted in part and denied in part. Further, as the only claim remaining in this action arose in Atlanta, Georgia, and most of the witnesses likely reside in or near Atlanta, the undersigned recommends that this matter be transferred to the United States District Court for the Northern District of Georgia for resolution of the assault claim.

## I.

Saucedo-Gonzalez alleges that on September 18, 2004, while he was incarcerated at USP Atlanta, he was assaulted by three BOP officers, Officers Young, McNeal, and Johnson, solely because nearly six months earlier, and while housed at another institution, he assaulted a correctional officer. He claims that during the assault his head was slammed into the concrete floor, he was punched and stomped in the face, and his nose was severely fractured resulting in visible facial disfigurement and a permanent breathing impairment. Saucedo-Gonzalez states that he did not report the assault as such, but instead reported he had fallen out of bed. Saucedo-Gonzalez claims he did so because the named BOP officers threatened him with additional physical harm if he told the truth.

2

Saucedo-Gonzalez concedes that immediately after the alleged assault he was examined and treated by medical staff at USP Atlanta and no additional treatment was deemed necessary. He also concedes that immediately on his arrival at USP Lee, he was examined by medical staff for purposes of an intake exam, and although noting he had some healing facial injuries, the medical personnel determined that no treatment was necessary. Nonetheless, he claims that he has been denied proper medical treatment for his injuries.

## II.

In support of its motion for summary judgment, defendant attached affidavits addressing Saucedo-Gonzalez's claims[2], information generated during the BOP investigation of the alleged assault, portions of Saucedo-Gonzalez's institutional medical and disciplinary record, and a digital video recording of the physical exam completed by medical personnel immediately after the alleged incident on September 18, 2004.

During the BOP investigation into the alleged assault, Officers Young, Johnson, and McNeal provided statements as to their recollection of the events occurring on September 18, 2004. All three accounts state the following: At approximately 9:45 a.m. on September 18, 2004, staff began moving Saucedo-Gonzalez to another cell, and he was handcuffed and the door opened without incident. However, once he was removed from his cell Saucedo-Gonzalez became aggressive and spat on Officer Young. The officers then took Saucedo-Gonzalez to the

---

[2]Notably, the government did not attach affidavits from any of the named correctional officers, but instead attached an affidavit from the Sharon Wahl, a paralegal for the Consolidated Legal Center at the Federal Correctional Institution in Beckley, West Virginia. The attachments to Wahl's affidavit, which included the final memorandum generated after the BOP's investigation into Saucedo-Gonzalez's assault claim, likewise, did not include any sworn statements from the named correctional officers.

3

ground and held him there until leg irons were secured. Immediately thereafter, Saucedo-Gonzalez was escorted to the medical unit where he was examined by institutional medical staff.[3] Def. Mot. Summ. J., Ex. 1, Attach. B & D.

The digital video recording of the medical exam establishes that Saucedo-Gonzalez was throughly examined by a Physician's Assistant ("PA") at USP Atlanta just minutes after the alleged assault. During the course of the exam, the PA noted Saucedo-Gonzalez had minimal injuries - some small lacerations to his lips, a contusion on his nose, and a scrape near his ear. The PA also throughly examined and manipulated Saucedo-Gonzalez's nose, and he found that although there was some dried blood near his nostrils, his nose was not actively bleeding. Notably, throughout the entire exam, including when the PA was manipulating Saucedo-Gonzalez's nose, the bridge of his nose, and his nostrils, Saucedo-Gonzalez appeared to be in no obvious distress, he did not have any difficulty breathing and/or communicating, and he was at times winking, smiling, and making inappropriate gestures to the female videographer. During the exam, Saucedo-Gonzalez informed the PA that he incurred the instant injuries falling from his bed during a deep sleep. Def. Mot. Summ. J., Ex. 1, Attach. N.

An Inmate Injury Assessment completed following the incident on September 18, 2004, notes that Saucedo-Gonzalez had a superficial laceration on his lower lip, some abrasions on his upper lip, two contusions near his left ear, and a contusion on the bridge of his nose. The clinical notes further indicate only minor first aid was required, the wounds were cleansed with water and

---

[3]As noted in the preceding footnote, the defendant has not submitted sworn statements from any of the named correctional officers. Accordingly, the court has gleaned defendant's version of the incident from the BOP's investigative report attached to Wahl's affidavit.

4

hydrogen peroxide, and no follow-up treatment or medication was prescribed or indicated. Def. Mot. Summ. J., Ex. 1, Attach. C.

Saucedo-Gonzalez subsequently was charged and convicted of assaulting a staff member for his behavior, necessitating the use of force, on September 18, 2004. Def. Mot. Summ. J., Ex. 1, Attach. D. Saucedo-Gonzalez was transferred to USP Lee nine days later, on September 27, 2007. During his intake exam, Saucedo-Gonzalez stated that he was hit in the face and head approximately one week earlier, and he believed his nose was broken. On exam, the medical official noted Saucedo-Gonzalez's nose had obvious deformities and that there was some bruising under his right eye which appeared to be healing, a small abrasion on his lower lip which was also healing, and there were multiple red areas on his head. Saucedo-Gonzalez denied any blurred vision or headaches. The medical officer noted only minor first aid was warranted, she gave him 400 milligrams of Motrin, and she advised him to follow-up with medical if his symptoms worsened. Def. Mot. Summ. J., Ex. 1, Attach. E; Def. Mot. Summ. J., Ex. 2, Attach.

Saucedo-Gonzalez did not seek any further care for his alleged injuries until November 15, 2004. However, in the interim he was examined two additional times - on October 6, 2004, following an altercation with another inmate, and on October 18, 2004, after force was used to remove him from his cell. On October 6, 2004, medical staff only noted some small abrasions and bruising, and no injuries were noted on October 18, 2004. Def. Mot. Summ. J., Ex. 1, Attach. F & G.

On November 15, 2004, Saucedo-Gonzalez complained to medical staff that he believed that the correctional officers broke his nose during the September 18, 2004 assault. He complained that "occasionally" when he blew his nose he saw a little bit of blood, and he had

5

some difficulty breathing through his nose. On exam, the Physician's Assistant noted that Saucedo-Gonzalez's nose had an obvious deviation to the left, causing a somewhat constricted air flow on the left side compared to the right side, which was wide open, but that there was no swelling, polyps, nor obvious bleeding in the nasal cavity. Nonetheless, he referred Saucedo-Gonzalez for x-rays. Def. Mot. Summ. J., Ex. 2, Attach. X-rays taken on November 21, 2004, at the Walter Reed Army Medical Center, revealed a non-acute right nasal bone fracture with smooth margins. Def. Mot. Summ. J., Ex. 1, Attach. H. Having reviewed the x-rays and Saucedo-Gonzalez's medical records, Dominick McLain, D.O., determined that there was no medical indication to correct the deviation in Saucedo-Gonzalez's nose and that no further treatment was warranted. Def. Mot. Summ. J., Ex. 2.

Saucedo-Gonzalez has not sought any further treatment for the injuries allegedly sustained on September 18, 2004. However, since then he has been examined by institutional medical staff on more than forty additional occasions for a variety of ailments and following several altercations between Saucedo-Gonzalez and other inmates and staff. In one such instance, Saucedo-Gonzalez received treatment for yet another injury to his nose which he incurred during a fight with another inmate. Def. Mot. Summ. J., Ex. 1, Attach. I-K; Def. Mot. Summ. J., Ex. 2, Attach.

### III.

Upon motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts in the light most favorable to the party opposing the motion. Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir. 1985). However, the court need not treat the complainant's legal conclusions as true. See, e.g., Custer v. Sweeney, 89 F.3d 1156, 1163

6

(4th Cir. 1996) (court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted); Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Further, although the movant initially bears the responsibility of asserting a basis for its motion, if the movant succeeds in demonstrating that there is no issue of material fact, the burden then shifts to the non-movant to establish the existence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant; on the other hand, the evidence of the non-movant must be believed and all justifiable inferences must be drawn in his favor. See Anderson, 477 U.S. at 255; see also Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts.").

The FTCA waives the sovereign immunity of the United States for monetary claims "for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28

7

U.S.C. § 1346(b)(1). Because of this waiver, the United States may be "held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." <u>Medina v. United States</u>, 259 F.3d 220, 223 (4th Cir. 2001); 28 U.S.C. § 1346(b). On its face, the FTCA only waives sovereign immunity to the extent that the tortfeasor acts within the scope of his employment. 28 U.S.C. § 1346(b)(1). Further, even when acting within the scope of employment, the waiver is not absolute, and Congress has specifically placed beyond the FTCA's reach an area of exemption which may be relevant to this action: the "discretionary function exception," which eliminates liability for actions or omissions stemming from a discretionary duty. <u>See</u> 28 U.S.C. §§ 2680(a), 2680(h).

### A. Assault

The United States has not raised any question of subject matter jurisdiction and offers instead only various defenses to liability on the merits of Saucedo-Gonzalez's claims under applicable state law. However, there are clearly two threshold questions as to whether there can be any liability under the FTCA as to this claim. First, Saucedo-Gonzalez claims that without cause and solely for retaliatory purposes, the three named officers punched and kicked him causing serious injury. Thus, the obvious question is whether such an assault falls within these officers' scope of employment because, if not, the United States has not waived sovereign immunity on such claims. Second, if the alleged assault did fall within the scope of the officers' employment, as it was incidental to those officers' efforts to regain control over Saucedo-Gonzalez, does such behavior fall under the discretionary function exception to liability?

8

## 1. Scope of Employment

Whether an employee is working within the scope of employment for purposes of the FTCA is governed by the law of the state in which the allegedly wrongful act occurred. Gutierrez de Martinez v. Drug Enforcement Admin., 111 F.3d 1148, 1156-57 (4th Cir. 1997). In determining whether an alleged tort occurred within the scope of employment, the court may hold a hearing or permit limited discovery, but need not do so if such a hearing is unnecessary and/or if the pleadings, affidavits, and any supporting documents fail to reveal an issue of material fact. See Lee v. United States, 171 F.Supp.2d 566, 574 (M.D. N.C. 2001).

Saucedo-Gonzalez makes no allegation as to how the three named correctional officers' alleged assault fell within the scope of their employment. Rather, Saucedo-Gonzalez states only that he was beaten in retaliation for committing an assault on another correctional officer approximately six months earlier at another facility.[4] Accordingly, on its face, the complaint seems to allege that the ultimate purpose of the assault was not to protect or further the interests of the BOP, but was motivated by a personal vendetta, which may fall outside the scope of employment.

The government had not filed any type of certification that the three named correctional officers' actions fell within the scope of their employment. Nonetheless, the government appears to concede that there was a necessary and appropriate use of force by the three correctional officers in response to Saucedo-Gonzalez's inappropriate and threatening behavior. Saucedo-

---

[4]The undersigned notes that Saucedo-Gonzalez has not provided a succinct or detailed complaint, rather he has relayed the facts of his complaint through various affidavits and signed institutional statements which the court has considered in their entirety and in the light most favorable to Saucedo-Gonzalez in response to defendant's motion for summary judgment.

Gonzalez did not address this argument in his response to the defendant's motion and simply states "I do believe that I already provided sufficient support for my claims."[5] Interpreting this and Saucedo-Gonzalez's signed institutional statements in the light most favorable to Saucedo-Gonzalez, the undersigned infers that Saucedo-Gonzalez denies that he engaged in any inappropriate or assaultive behavior. Accordingly, the court must consider whether an assault motivated solely by the perpetrators' desire for revenge falls within the scope of employment.

Under Georgia law[6] an employer cannot be held liable on the basis of respondeat superior for an employee's intentional tort if the action was not done "in furtherance of the employer's business, but rather [was done] for purely personal reasons disconnected from the [employer's] authorized business. . . ." Piedmont Hosp., Inc. v. Palladino, 580 S.E.2d 215, 217 (Ga. 2003). "An employer may ratify tortious conduct by an employee, and thereby assume liability for unauthorized conduct, but for liability to be imposed on the employer by ratification, there must be evidence that the employee's conduct was done in furtherance of the employer's business and within the scope of the employment." Travis Pruitt & Assoc. v. Hooper, 625 S.E.2d 445, 449 (Ga. App. Ct. 2005). Here, broadly interpreting the United States' motion, it appears the United States has assumed liability for the correctional officers' actions as they relate to the alleged assault on September 18, 2004.

However, the question remains whether the "use of force" was within the scope of employment because Saucedo-Gonzalez alleges the act was motivated solely by revenge

---

[5]This one sentence constitutes Saucedo-Gonzalez's entire response to the defendant's motion.

[6]Because the alleged assault occurred in Georgia, Georgia law applies to all issues determinative of whether Saucedo-Gonzalez was assaulted.

10

spawning from another altercation occurring six months prior. "[W]here an employee is acting exclusively for himself and is not acting at all for the employer, and does not profess to be acting for the employer, there is no such thing as a master assuming by ratification liability for the personal act of his employee." Id. An act is considered within the scope of employment, even if the employee is not authorized to perform the particular act or is forbidden to perform the particular act, if the act is within the class of activities performed on behalf of the employer. Bacon v. News-Press & Gazette Co., 373 S.E.2d 797, 799 (Ga. Ct. App. 1988). It is only in those instances when the employee's alleged misconduct is entirely disconnected from his employer's business and is wholly personal to himself that the employer will escape liability. Brown v. AMF Bowling Centers, Inc., 511 S.E.2d 619, 620 (Ga. Ct. App. 1999). "Except in plain and indisputable cases, the question of whether the employee is acting in the prosecution of his employer's business and in the scope of his employment at the time of an injury to another is a jury question." Howard v. J.H. Harvey Co., Inc., 521 S.E.2d 691, 695 (Ga. App. Ct. 1999) (finding that a genuine issue of material fact existed as to whether a retail store was liable for a security guard's actions in relation to his questioning and detainment of a suspected shoplifter under doctrine of respondeat superior because the issue of scope of employment was a jury issue).[7]

There is clearly an issue of material fact as to whether the correctional officers were acting within the scope of their authority as correctional officers to maintain order and discipline within an institution and Saucedo-Gonzalez's contention that the correctional officers were

---

[7]Because this is a claim brought under the FTCA, the presiding judge is the ultimate fact finder in this case. See 28 U.S.C. § 2402.

11

acting outside the scope of their employment and in revenge for his attack on another correctional officer. Neither party has addressed this issue, and based on the face of the pleadings, the undersigned cannot find at this stage that there is a clear basis for waiver of sovereign immunity under § 1346(b)(1).[8]

### 2. Discretionary Function

Assuming arguendo that the correctional officers' actions fell within the scope of their employment because Saucedo-Gonzalez was acting in an aggressive and threatening manner, the court must next determine whether their use of physical force is protected by the discretionary function exception to liability.[9] The discretionary function exception applies, even if the correctional officers abused their discretion, if, (1) the challenged conduct is "the product of judgment or choice," i.e., the exception does not apply when the employee is merely following "a federal statute, regulation, or policy [that] specifically prescribes a course of action," and (2) the challenged conduct is "based on considerations of public policy." Berkovitz v. United States, 486 U.S. 531, 536-37 (1988); 28 U.S.C. § 2680(a).

Correctional officers are authorized to use force against an inmate only after all other reasonable efforts to resolve a situation have failed, and they are authorized to apply physical restraints to an inmate as necessary to regain control over an assaultive or violent inmate. Def.

---

[8] The undersigned notes that if the correctional officers' actions fall outside the scope of their employment, this claim must be dismissed.

[9] The discretionary function exception excludes from the FTCA's waiver of sovereign immunity "any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

12

Mot. Summ. J., Ex. 1, Attach. L. However, the BOP regulations are replete with indication that correctional officers shall use "sound correctional judgment" in determining when, how, and what amount of force is used against an inmate. Id. Accordingly, although the BOP has a policy authorizing the use of force, correctional officers maintain discretion as to determining what situations require a physical force response and the extent of any such response. Therefore, the undersigned finds the correctional officers' decision to utilize force in this situation was a judgment or choice and, therefore, meets the first prong of the discretionary function test.

If the employee's judgment "advances the purposes of a regulatory scheme that gives an employee such discretion," an action may not be maintained under the FTCA. Williams v. United States, 50 F.3d 299, 309 (4th Cir. 1995). Likewise, if an employee has a "range of discretion to exercise in deciding how to carry out" an assigned duty, such discretionary acts are protected under this exception, and sovereign immunity is not waived. United States v. Gaubert, 499 U.S. 315, 325 (1991) (finding that the day-to-day decision-making at the operational level of a federal savings and loan association required judgments that are within the ambit of the discretionary function exception for suits under the FTCA). A correctional officer's decision as to how to respond to an inmate's aggressive and/or threatening behavior must balance the potential risk to the inmate during a physical confrontation as well as the potential security threat a violent and aggressive inmate poses to staff and other inmates. In fact, the BOP regulations specifically note that correctional officers are to use the least amount of force necessary to regain control of a situation and shall only use such force when non-forceful methods of regaining control are unsuccessful. Deciding when and how to use force in an institutional setting clearly balances public and social policy and safety concerns. See Alfrey v. United States, 276 F.3d 557,

13

565-567 (9th Cir. 2002) (finding that correctional officers have discretionary function in determining how to respond to inmate threats and in how to search an inmate's cell); Horta v. Sullivan, 4 F.3d 2, 18 (1st Cir. 1993) (stating that although police officers were required to follow certain rules pertaining to high speed police pursuits, because police officers retained discretion over how, when, and in what circumstances to continue to pursue a suspect, which invoked public policy concerns, police officers were acting in a manner consistent with discretionary function and, therefore, were not liable under the Mass. Tort Claims Act); Calderon v. Foster, Civ. A. No. 5:05cv00696, 2007 WL 1010383, at *6-7 (S.D. W.V. Mar. 30, 2007) (holding that correctional officer had discretionary authority as to how to respond to an inmate's violation of institutional rules).

Accordingly, the undersigned concludes that if the correctional officers acted reasonably in response to Saucedo-Gonzalez's aggressive and threatening behavior, their response may fall within the discretionary function exception to liability under the FTCA. However, if the correctional officers utilized a constitutionally excessive amount of force, their actions are not protected under the discretionary function exception. See Sutton v. United States, 819 F.2d 1289, 1296-97 (5th Cir. 1987). As noted above, there is a material dispute of fact as to whether the correctional officers acted reasonably in response to Saucedo-Gonzalez's inappropriate behavior or if the correctional officers acted solely for the purpose of revenge.

### 3. Reasonable Use of Force or Assault

Assuming arguendo that the correctional officers acted within the scope of their employment and none of the exceptions to liability apply, there remains a material issue of fact as to whether the United States is liable. Georgia law provides that physical injury done to another

14

gives right to a cause of action, unless the alleged aggressor is justified under some rule of law. Ga. Code Ann. § 51-1-13. Any "unlawful touching" amounts to a physical injury and is actionable under Georgia law, and such a claim can be supported by even a minimal amount of touching. Metropolitan Atlanta Rapid Transit Auth. v. Mosley, 634 S.E.2d 466, 468-69 (Ga. Ct. App. 2006) (citing Darnell v. Houston County Bd. of Educ., 506 S.E.2d 385, 388 (Ga. Ct. App. 1998)).

The United States concedes that some amount of force was used against Saucedo-Gonzalez on September 18, 2004, but contends that use of force was a necessary, appropriate, and authorized use of force in response to Saucedo-Gonzalez's threatening and assaultive behavior. Specifically, the United States contends after Saucedo-Gonzalez spat on Officer Young and became otherwise aggressive, Officers Young, McNeal, and Johnson were authorized to use force and/or apply restraints to Saucedo-Gonzalez to regain control over him and to prevent further assaultive behavior; thus, the "touching" was privileged under Georgia law.[10] On the other hand, Saucedo-Gonzalez states that he did not spit on Officer Young nor was he otherwise assaultive and, instead, the three named officers assaulted him in retaliation for committing a prior assault on another officer. Accordingly, there is clearly a factual dispute as to whether the use of force on September 18, 2004 was justified and/or authorized under Georgia law.[11]

---

[10]Ga. Code Ann. § 51-11-1 provides "[i]f the defendant in a tort action was authorized to do the act complained of, he may plead such authorization as justification."

[11]The government cites Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998), in support of its assertion that Saucedo-Gonzalez's statements that he was assaulted are conclusory and do not establish a genuine issue of material fact. Although Causey did find "conclusory statements, without specific evidentiary support" are insufficient to create an issue of fact, that case involved allegations

In arguing the use of force was lawful, the United States relies on the internal investigation of this incident completed by both USP Atlanta and the BOP's Office of Internal Affairs, both of which found the use of force necessary and appropriate in response to Saucedo-Gonzalez's actions, based in significant part on the named officers' version of events. Although the undersigned notes these findings are persuasive and fully support the defendant's position, at this stage in the proceedings the court cannot attribute the prison or the BOP's findings as to the events occurring on September 18, 2004 more weight than the plaintiff's version of those events. As such, the undersigned finds there is a material issue of fact as to whether Saucedo-Gonzalez was assaulted by correctional officers at USP Atlanta on September 18, 2004.

Additionally, although Saucedo-Gonzalez stated during the medical exam he incurred his injuries falling from bed, he alleges he was threatened with more physical harm if he disclosed the true source of his injuries. The government concedes correctional officers used force to subdue Saucedo-Gonzalez and that immediately after that use of force he was examined by institutional medical staff, who noted he had various minor injuries, but rely on his statement as

---

of discrimination under Title VII , and it is clearly distinguishable from this case. In <u>Causey</u> there was no evidence to support his claim he was harassed. Here, there is substantial evidence of some type of "touching" under Georgia law, which may or may not be privileged; thus, there is some evidentiary support for Saucedo-Gonzalez's claim he was unlawfully touched. Defendant's contention that the touching was privileged based on the BOP's investigation into the matter does not, at this stage, trump Saucedo-Gonzalez's claim the "touching" was unlawful. Therefore, there is a clear dispute of material fact as to whether he was assaulted.

Likewise, the government's reliance on <u>Picariello v. Fenton</u>, 491 F.Supp. 1026, 1038 (M.D. Pa. 1980), is also misplaced. Although the court found in <u>Picariello</u> that the incidental and necessary touching of inmates by correctional officers in the course of their professional duties did not constitute an assault or battery, such a finding can only be made if the officers were in fact acting appropriately within the course of carrying out their professional duties. In fact, in <u>Picariello</u>, such findings were made after a trial. As such, <u>Picariello</u> does not support the government's contention that disputed issues of fact regarding an excessive force claim may be resolved at summary judgment.

16

to the source of his injuries as evidence that Saucedo-Gonzalez was indifferent to his injuries and was not severely harmed. The government also offers a digital video recording of the medical examination completed immediately following the incident to demonstrate that Saucedo-Gonzalez's demeanor is inconsistent with his claim he was assaulted. Under Georgia law, a victim of assault need not establish he suffered serious or significant injury. See Metropolitan Atlanta Rapid Transit Auth., 634 S.E.2d 468-69. As such, because the defendant concedes some amount of force was used against Saucedo-Gonzalez and the evidence establishes there was some amount of touching between the correctional officers and Saucedo-Gonzalez which may or may not have been unlawful, the undersigned is unable to resolve this disputed factual issue without conducting a trial.

### 4. Denial of Summary Judgment on Excessive Force Claim

Based on the foregoing, the undersigned finds there are material questions of fact as to whether the correctional officers acted within the scope of their employment subjecting the United States to liability under the FTCA, whether the correctional officers' actions may be protected by the discretionary function exception to liability under the FTCA, and whether the use of force amounts to an assault under Georgia law. Accordingly, the undersigned **RECOMMENDS** that defendant's motion for summary judgment on this claim be denied and a trial be held on these issues.

### B. Medical Negligence

Saucedo-Gonzalez's alleges he was provided with medically negligent treatment from the date of his injury forward and, as a result, suffers from a permanent facial disfigurement and has trouble breathing. Because he was incarcerated in Georgia and Virginia during the times he

17

alleges to have been negligently denied medical treatment, the court must consider his claims under the negligence laws of both states.[12]

To prove negligence under both Georgia and Virginia law, a plaintiff must (1) identify a legal duty of the defendant to the plaintiff, (2) a breach of that duty, (3) subsequent injury to the plaintiff, and (4) that the defendant's breach of duty was the proximate cause of injury. James v. Flash Foods, Inc., 598 S.E.2d 919, 921 n. 3 (Ga. App. 2004); Talley v. Danek Medical, Inc., 179 F.3d 154, 157 (4th Cir. 1999). Saucedo-Gonzalez fails to state a claim for negligence because he fails to show any breach of the BOP's duty to provide him with medical care.

Saucedo-Gonzalez does not dispute that he was examined by medical staff at USP Atlanta immediately following the alleged altercation and that staff determined he did not need any further medical treatment. The digital video recording of this exam clearly establishes that Saucedo-Gonzalez was thoroughly examined by a medical professional, he was in no apparent pain, and he had no difficulty breathing. Similarly, he does not dispute that during the intake exam at USP Lee nine days later, he was throughly examined by institutional medical staff following his allegation that he was assaulted, but staff again determined that there was no need for medical treatment. There is no evidence suggesting Saucedo-Gonzalez complained of significant and/or lingering pain and/or difficulty breathing due to his alleged injuries at this

---

[12]Decisions pertaining to the provision of medical care are not subject to the discretionary function exception to liability. See Magee v. United States, 121 F.3d 1, 6 (1st Cir. 1997) (holding decisions about specific medical treatment fall outside protection of discretionary function exception); Rise v. United States, 630 F.2d 1068, 1072 (5th Cir. 1980) (finding that the failure to provide proper medical care cannot be considered the exercise of a discretionary function); Jackson v. Kelly, 557 F.2d 735, 738 (10th Cir. 1977) (stating the discretionary function exception does not absolve government from liability for negligent medical care).

18

exam nor that he sought any further medical treatment for his alleged injuries until November 15, 2004, despite the fact he was treated by institutional medical staff twice in the interim - for fighting with another inmate and resisting correctional officers. Furthermore, following his November 15, 2004 complaint, he was re-examined by medical staff, who again found no need for medical treatment, but nonetheless ordered x-rays. Those x-rays showed no acute or recent injury to Saucedo-Gonzalez's nose. Based on the foregoing, the undersigned concludes that Saucedo-Gonzalez received appropriate and timely treatment for his alleged injuries and, thus, there was no breach of the owed duty of care.[13] Therefore, the undersigned **RECOMMENDS** defendant's motion for summary judgment on this claim be granted.

## IV.

In sum, the undersigned finds that there are issues of material fact precluding summary judgment as regards the alleged assault on September 18, 2004. Specifically, the undersigned finds these issues to be: (1) whether the correctional officers acted within the scope of their employment subjecting the United States to liability under the FTCA, (2) whether the correctional officers' actions may be protected by the discretionary function exception to liability

---

[13]Because Saucedo-Gonzalez does not allege that he was denied medical treatment due to any medical misjudgment, but instead claims only that correctional officials generally denied him appropriate medical care, the court need not construe his claim as one of medical malpractice. However, even had he alleged that he was denied appropriate medical care due to a medical misjudgment, Saucedo-Gonzalez's failure to file an expert affidavit specifically setting forth the negligent act or omission and the factual basis for his claim would be fatal to such a claim. Ga. Code Ann. § 9-11-9.1; Va. Code § 8.01-20.1; see also James v. Hosp. Auth. City of Bainbridge, 629 S.E.2d 472, 474-76 (Ga. App. 2006) (finding the trial court properly dismissed plaintiff's medical malpractice action because plaintiff failed to file an expert certification); Parker v. United States, 475 F.Supp.2d 594, 596-97 (E.D. Va. 2007) (finding that because plaintiff failed to file an expert certification on his medical malpractice claim and because plaintiff's allegations of medical negligence do not fall within the province of common knowledge, his FTCA claims of medical negligence must be dismissed).

19

under the FTCA, and (3) whether the use of force amounts to an assault under Georgia law. Accordingly, the undersigned **RECOMMENDS** that defendant's motion for summary judgment on the Atlanta excessive force claim be **DENIED** and a trial be held on these issues. However, the undersigned finds that Saucedo-Gonzalez has failed to present any question of material fact as to his remaining claim of negligent denial of medical treatment; thus, it is **RECOMMENDED** that defendant's motion for summary judgment be **GRANTED** as to the medical treatment claim.

## V.

Finally, the undersigned **RECOMMENDS** that this matter be transferred to the United States District Court for the Northern District of Georgia for further proceedings on the sole remaining claim concerning excessive force at the Atlanta prison. Under 28 U.S.C. § 1402(b), appropriate venue for a claim brought under the Federal Tort Claims Act is in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred. At the time this suit was brought, therefore, venue was proper both in this district and in the Northern District of Georgia as part of the claims arose in each district. This Report and Recommendation recommends dismissal of the only claim arising in the Western District of Virginia, leaving for resolution only the claim that arose in the Atlanta prison. With regard to that remaining excessive force claim, the most convenient forum for adjudication is the Northern District of Georgia as it arose in that district, and no witnesses or parties reside in the Western District of Virginia.[14]

---

[14]While for venue purposes, an inmate is not a resident of the judicial district where he is incarcerated, it is worth noting that Suacedo-Gonzales, housed at USP Lee in Lee County, Virginia, when this suit was brought, is now incarcerated in California. Lindsey v. United States, 2:06cv33, 2006 WL 2060651, at * 2 n. 1 (N.D. W.Va. July 21, 2006); Cohen v. United States, 297 F.2d 760, 774 (9th Cir. 1962) (stating "[o]ne does not change his residence to the prison by virtue of being

Therefore, for the convenience of parties and witnesses, and in the interest of justice, pursuant to 28 U.S.C. §1404(a), it is **RECOMMENDED** that this case be transferred to the United States District Court for the Northern District of Georgia.

## VI.

The Clerk is directed to immediately transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if they have any, to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusions of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by the reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to Saucedo-Gonzalez and all counsel of record.

Enter this _13_ day of August, 2007.

Michael F. Urbanski
United States Magistrate Judge

---

incarcerated there); see also Ellingburg v. Connett, 457 F.2d 240, 241 (5th Cir. 1971); Urban Industries, Inc., of Kentucky v. Thevis, 670 F.2d 981, 986 (11th Cir. 1982); Brimer v. Levi, 555 F.2d 656 (8th Cir. 1977).

Case 7:07-cv-00073-SGW-mfu   Document 22   Filed 08/14/07   Page 21 of 21   Pageid#: 173